Good morning, your honors. Good morning. May it please the court. While appellants raise certain jurisdictional issues, and I would be happy to address them if the court finds it helpful, I would like to focus my argument today on the main issue on this appeal. Namely, were there sufficient allegations below to state fraud claims? As we showed, appellants stated sufficient facts to take their fraud claim to discovery. The law is that appellants needed to show that their fraud claim is plausible, not that it is more likely than other explanations for the same events. This is the court's decision in Laurel and Financial. Justice Minash's opinion in Altimere specifically warned against mistaking heightened pleading standards for impossible ones, and Rule 9b never required absolute particularity. This court also mandates that complaints should be read generously, with appellants getting all their reasonable inferences drawn in their favor. I get those standards. So the district court thought that the allegations you had were promises of future conduct or puffery. So why don't you tell us what are the allegations that meet the relevant standard? I would just like to note first that there were several grounds for the dismissal. One of them is that the court didn't find sufficiently particularized falsity allegations, and we had those. But in terms of whether they stated an actionable claim on the puffery ground, respondents say all we had were these hazy aspirational statements that are nothing but puffery. But this can be proved wrong. So we allege that they were told that Limones made participants profitable in the past. So he either did or did not. There is a historical accuracy involved here that can be verified. This is the same as credit worthiness, a strong company in Silver Creek, or guarantees of profitability in Autori and Petalivanian, not just the greatest businessmen with the best results, as are issued in respondents' cases, and with no cautionary language as in their other cases. So to the extent they argue that unless you promise concrete numbers, it is puffery, that has been rejected by the Supreme Court and Virginia bank shares, which found representation that planted would not be worse off actionable. So there's even strong precedent that entirely subjective, Pollyannish statements of rosy corporate speak can be actionable if appellants flee facts that speakers did not believe in them, which they did here, while respondents offer existential arguments such as, what is success? This court in Novak said inventory in good shape statements are actionable. So you said that he said that the past participants in the profit were made profitable. Right. And that's – that you can show is false. How? By showing that they all were not profitable. There were allegations in the complaint that there is an expensive, fraudulent structure going on here where businesses are purposefully destroyed. They come in with promises that they'll make you more profitable, will turn you around. This is what Limonis does. For 10 years, he turned around, you know, 100 other companies. And then they are all destroyed in the same way. He inflicts debt on them without them knowing, and then they're trapped, and they have to basically go with his plan, which is always to weaken the company and take its assets, take intellectual property for himself on the cheap. There's an expensive, repeating pattern with many, many businesses that went on the show, which showed, by the way, that is also the facts that show that when they say we make your businesses profitable and we turn them around, when these promises are made, respondents know this is not true. Because this has been going on for every season with many, many businesses, and we pleaded specific examples of those businesses in the complaint. Now, for similar reasons, the statements labeled forward-looking, such as Limonis' intent to grow the company or act for its benefit, are actionable as long as they're offered with a preconceived and undisclosed intent of not performing. Whereas here, such statements are offered as statements of present intent to act consistently with prior conduct, which respondents knew to be contrary to this expressed intent. This is actionable. This is the Spinelli case and the Stewart case. I'm sorry. What are the statements here that you think were not just forward-looking statements of expressed intent that could be proven false? So it's the stated intent to grow the company and act towards benefit, to grow its brand, to expand the company. This is what appellants came for. They had a successful company already. They were making… That sounds aspirational, though. It doesn't sound like a specific kind of promise of a statement that you then kind of rely on to your own detriment. I mean, everybody wants to grow their company, but that grow is… What's grow? I mean, there has to be more specific than that for someone to then have a gritting to against. Wait a second. That's a lie. They never did anything. So you have to take fraud allegations as a whole, right? In the context of telling people we have turned around a hundred other companies, we made them more profitable, when you also say I have a present intent of do the same to this company. Is your assertion that the fraudulent statements were the representations with regard to the number of companies that they had turned around? It's the representation that they consistently make them better, that they prove them, they make them more profitable, and that is provably wrong. I'm sorry, my time. That is provably wrong because you can show that instead of making the companies more profitable, they were systematically destroyed, they were undermined, their profit margins were destroyed, their trademarks were taken away. In that context, when he says to you, I promise to do for you what I did for others and the others were successes, I turned them around, then those… It might be that somebody has an intent to grow the company. If the brand would be profitable, they want to grow the brand, but economic realities might intervene, and so it might be that the strategy changes. And so you can't say that somebody is committing fraud because that kind of thing happened. So you have allegations that show he always just wanted to destroy the brand, and even if it were profitable, he still was going to destroy it and exploit it for some other purpose. For 60 other companies, it can't be that's economic reality that it makes it fail. It can't be that it's just bad advice. Did you have the allegations about the 60 companies? That was the amended complaint that was not filed, right? That was the second amended complaint that was proposed that never accepted. So the district court gave you an opportunity to file that complaint, right? Right. But you did not meet the deadline for filing. So there were several factors at play there. Just to clarify, so in the operative complaint that the district court considered, you did not have the 60 track records? We don't have the number 60, but we do say that the other businesses are systematically destroyed and damaged in the same way. So why should it be that in this appeal we should be looking at this amended complaint that was never filed? You shouldn't be. No, I shouldn't be. We are appealing the dismissal of the first amended complaint. Okay, so just to go back to my question, and so the answer cannot be that you have 60 companies and show that track record. So what are the allegations that show that he always, you know, regardless of the profitability of the brand, wanted to destroy it from the beginning, and therefore the representations were fraudulent? There were specific allegations that respondents, when they made these representations, knew that the majority, I quote from the complaint, the majority of the businesses are now closed, severely damaged, or settled with debt owed to Lemonis. They also cited specific examples of companies so destroyed. So if I may, I'll cite the, it's A156 at paragraph 13, A199 to 203 at paragraphs 199D, 201, and 203BI, as well as A178 at paragraphs 104 through 06. And we submit, Your Honor, that it is these specific allegations of harm to other companies that shows that there is a purposeful scheme here that the court ignored when it said that there were no particularized allegations of falsity. And in terms of, I'm sorry, I'll reserve my time. I kind of would like to ask a little bit about the jurisdictional question. Sure. So your position is that if the parties have an agreement to arbitrate that deprives the district court of subject matter jurisdiction over the case? Your Honor, one second, that wasn't our argument. This is what Machete argued below. Machete moved on to 12B1. Okay. And said the court had. Now you're saying it here. Well, it. That's right? Yeah, so now they say, oh, my bad, this is not jurisdictional. This is a contractual prerequisite. But once the court knew that there was a subject matter jurisdiction challenge raised, it should have decided it first. And we know. Go ahead, Sonia. The seriousness of the challenge, right? So if somebody says you have no subject matter jurisdiction because it's the third Wednesday of the month, you know, the district court doesn't need to take that seriously, right? It has to be like an actual reason to think that the court lacks subject matter jurisdiction. So I guess how could it be that a contract between two private parties to arbitrate deprives the court of subject matter jurisdiction? So if your Honor looks at the decisions in Smith and Stafford, that's exactly what they held, that this is a jurisdictional issue. Well, it really baffles me. It's a contractual provision between parties. It has nothing to do, and Congress has in the Federal Arbitration Act, Congress has certainly put its thumb on the scale encouraging the use of arbitration, but it hasn't made it jurisdictional or it hasn't made arbitration clauses non-waivable. So if you look at the Bowers opinion at note nine, this court said this was an unresolved issue in the circuit. But let's admit it, it doesn't matter how serious the challenge was when the party moves under 12B1 and says the court has no subject matter jurisdiction. It has to be decided first. Do you think the principle should be that when a party challenges subject matter jurisdiction, no matter what the nature of the challenge is, the district court needs to address that before addressing anything else in the case? There's precedent that it has to, and here it made a difference. Because the only opposition to the challenge was Appellant's submission that they were fraudulently inducing to the arbitration clause. And you know the clause. So actually, given that, it would have made sense for this, even if you were right, it would make sense for the district court to determine first whether the arbitration agreement was valid by considering the fraudulent inducement. The only difference is if the court found that it was valid, it would be dismissal without prejudice. Yes. Then it should have been enforced, you're saying. Well, you still would have had a determination that there was no fraudulent inducement, right? No, it would be determination whether or not we stated sufficient facts on the face of the complaint. But the dismissal would then be without prejudice because it would be full of- Can I ask you this question? So let's assume that I don't think it's jurisdictional, but we do have a strong policy that arbitration agreements should be enforced. And so maybe in general, if there's a motion to commit arbitration, the district court should consider that before addressing other aspects of the case, even not as a matter of jurisdiction, but just as a matter of respecting the Federal Arbitration Act. I agree. If that is true, are you able to complain about it? I mean, if it's waivable, wouldn't the other party that was seeking enforcement of the arbitration have to complain about it? So your argument really depends on it being jurisdictional, right? But Machete did complain about it. They raised this challenge below and it was never decided. They're not – I mean, they could have appealed from the district court effectively denying the motion to compel arbitration, but they have not done that, right? We do submit that here the fact that the court never addressed the jurisdictional challenge actually does affect the merits because if it did do it right and address it first, then there would be dismissal without prejudice and we would be arbitrating. You would have lost for a different reason, which is what you really want. But we would be – we would be allowed to proceed in another formula. I understand. I mean, would there necessarily be dismissal without prejudice? So if it's not jurisdictional, if it's just a reason why the court carried your claim, I suppose the court could have dismissed it without prejudice, but it might also be that you failed to state a claim because you didn't have a claim against the other party because you were required to go to arbitration. But it would be the arbitrator who would get to decide this, not the district court. So the district court had – We would go into an arbitration, right? We would go into arbitration. That arbitration would decide the merits of the claim. That's right. Okay. Okay. All right. While you preserve time for rebuttals, we'll hear from you again. Thank you. Let's turn to the first appellee, Mr. Coleman. Good morning, Your Honors. May it please the court, my name is Jesse Coleman and I represent Defendant Appellees Marcus Lomonas, Marcus – or ML Retail, LLC, and Marcus Lomonas, LLC, what I'll refer to as the ML defendants. We're here today on a request from the plaintiffs' appellees to reinstate claims that they themselves sought to dismiss, but only after the district court had already dismissed them with prejudice, not the merits. Choosing not to avail themselves of the district court's offer to move for leave to amend their complaints and thereby attempt to fix the numerous fatal defects in their pleadings, appellates instead attempted to file a notice of voluntary dismissal under Rule 41 when the district court had already dismissed the claims substantively under Rule 12b-6. Plaintiffs then compounded this error by attempting to refile their dismissed claims in state court. It's well-established law in the Second Circuit and unaddressed in plaintiff's opening brief that a dismissal under 12b-6 is in fact a dismissal on the merits, that failure to appreciate the preclusive effect of such a dismissal on the merits is not a basis for overturning that ruling, nor is personal issues or unavailability of an attorney or an attempt to do so consciously and tactically as we see here happened or attempted to happen. Well, a jurisdictional defect would be a basis, right? So if the district court lacked jurisdiction, it would be. So what about the arbitration agreement, the pending motion to compel arbitration? Did the district court just ignore that? Your Honor, the arbitration agreement doesn't impact the ML defendants. They're not members of that. Oh, I see. So that's a question for the other appellees. So you're saying that your claim should have proceeded to the merits regardless. Yes, Your Honor. And other circuits have expressly recognized the rather common-sense conclusion that you cannot voluntarily dismiss claims without prejudice that a court has already dismissed with prejudice. Accordingly, the district court was correct and did not abuse its discretion in ruling that allowing plaintiffs to dismiss their claims without prejudice would be a manifest waste of judicial resources and would permit plaintiffs to dismiss with impunity a fully litigated complaint. Okay. So what about the decision on the merits? So if in fact Limonis represented that he wants to expand their brand and improve their company and in fact from the beginning he always wanted to raid the company for his own separate economic interest, why would that not be a fraud? Your Honor, for two reasons. One, the statement is forward-looking. As we demonstrated in our briefs, this is hazy aspirational. It's optimistic, and it's a statement of what they intend to do. Well, if he says I want to grow your brand and support your company, but in fact they could show that from the beginning he just wanted to raid it for parts or something, would that not be – that wouldn't be a misrepresentation? That wouldn't be the allegations of this case. So why is that not what's alleged here? What's alleged here is that they made a deal and that he invested $800,000 in purchased shares, and that they went forward and that they became members of different organizations within his, that they became partners or members of his LLC agreements, and that not in every instance were they profitable in all those instances. So you think it's not inconceivable that somebody could sit a claim based on an allegation that the counterparty promised to improve the company but actually always planned to raid the company, but that's just not the allegations here because the allegations here show efforts to improve the company and then some decisions that went well and some that didn't in the course of dealing. I think you'd have to also demonstrate, Your Honor, that there's reliance, and in this case the allegations conclusively demonstrate that there was no reliance. There was a concern that was raised between the on-air representations and the time of the shareholder agreement. These are the things that allegedly were the big concerns and the raiding that allegedly occurred, and they went forward with the shareholder agreement. So in this case there is no reliance that you can point to. So contrary to that. There's a disagreement about the remodeling of the shops and the amount of expenditures and the amount of money that was going to be spent and the amount of money that ended up being spent, and that all occurred prior to the on-air signature of the agreement going forward. So it's hard to see a reliance on representation of the agreements where some of the alleged misdeeds had already occurred prior to these signatures on the agreement. Indeed. It's prior to the memorialization of the agreement. Justice Kossel is very careful to point that out. We thought so, Your Honor. I thought you would. What about the allegations about the past performance of other companies? Maybe they relied on that to say, oh, well, he has this track record of improving companies, and so we think we should go forward with the agreement. Again, very hazy, very nonspecific. Why is that hazy? I mean that is an actual claim. It says like, oh, the other companies that have made deals with Limones have become profitable. That's a falsifiable claim. What they said was that he'd helped other businesses and that he'd helped turn around other businesses without specificity as to what those are, and in fact they identified some of those businesses, at least one of which was on the show or that had its dealings after the incident itself. And so when you're talking about 100 businesses otherwise identified in the amended complaint being helped or turned around, as we talked about in our complaint as well, what does it mean to be turned around? What does it mean to be helped? Not every single one of those is going to be profitable. Not every single one of those is going to be an ultimate success, success itself being a term that is demonstrated in the case law to be one of interpretation. So ultimately there were no actionable material statements that were made here, even in the allegations that were detrimentally relied on that resulted in fraud claims. I see my time is up. Okay. Thank you very much, Mr. Coleman. We'll turn it to the other appellee, Mr. Siegel. May it please the Court. Jonathan Siegel for Appellee Machete Corporation. This appeal is appellant's attempts to avoid the consequences of their own action. Appellants chose, despite a mediation and arbitration agreement, to move forward with their claims in the Southern District of New York and not pursue them under that agreement. But what happened to the motion to—I mean your client's motion to compel arbitration? What did the district court do with that? Technically it was not a motion to compel arbitration. Technically it was a motion to dismiss based on a mandatory mediation clause and that condition of the contract not being fulfilled. But you never actually made a motion to compel arbitration under pursuance of the FAA or to recognize their arbitration agreements? We didn't make a motion to compel arbitration. So it was a proposed ground for dismissal? The proposed ground was that there was a mandatory mediation clause. And you thought that that deprived the district court of subject matter jurisdiction? We were mistaken in filing that under 12B1. It should have taken a different form. What form should it have taken? Perhaps a venue motion or perhaps some kind of motion to compel arbitration. A venue motion. Okay, so your position now is that it does not go to subject matter jurisdiction? Our position is that it was a contractual precondition and it does not go to subject matter jurisdiction. But it's a contractual precondition, so normally it would be something that should be decided before going to the merits, right? Normally it would be something that was decided. However, the court did explicitly find that it had subject matter jurisdiction over the case. In Special Appendix 4, in its ruling on the 12B6 motion, again in its ruling on the 12B6 motion, in Special Appendix 12, plaintiff's federal jurisdiction is predicated on the RICO claim. And then finally, on its ruling on the motion for reconsideration, in Special Appendix 28, on reconsideration, the court concludes that it does have subject matter jurisdiction over the state law claims. You don't seek reversal of the district court's determination not to grant your motion with regard to the mediation provision, correct? We absolutely do not. Extensive resources have been spent litigating this case fully. But apart from whether it's jurisdictional or not, just as a matter of practice, even if they are all merits questions, district court should decide whether the parties have agreed to arbitration before going on to decide the dispute in court, shouldn't it? I think that we can look to what the district court did and note that it did decide to move forward with the merits and disregard the other motion. And so that would be a tacit rejection of that motion. Certainly your opponent's in no position to raise that as errors, since she's the one that brought the litigation to the court. You raised the possible defendant, but you're not arguing the impropriety of that before us. I am not. And it's quite clear that it's not subject matter jurisdiction, so I don't see how we get to weigh in on that. So go ahead. I agree it's not subject matter jurisdiction, and we definitely aren't seeking to overturn the fact that the case wasn't sent to mediation. Are you waiving any possible objection to the failure to go to mediate at this time? We absolutely are. Thank you. Just a few notes on Ms. Bogorod's discussion of the fraud claims. One thing Ms. Bogorod fails to note is that the examples of the businesses going south that were provided in the operative complaint, the one example, postdated any representations made to these plaintiffs by a number of years. Additionally, and importantly, the record shows in their complaint that appellants got into business with Mr. Limones and stayed in business with him for a number of years after the so-called representations were made. You can't show intent to defraud or knowledge of falsity in hindsight, and they don't have any allegations that when any statements were made or any alleged misstatements were made that people knew or should have known that they were false at the time. Why, just because of the time that had passed? I mean it's possible for somebody to make a misrepresentation and have a plan that takes some years to effectuate, is it not? Yes. The cases that they cite for that proposition also involved evidence that they – there was contemporaneous knowledge, and there's no such evidence as yet. So you're saying that the way to read the complaint is that he did have an intent to improve the company or improve the brand and so on, and just later business decisions may require him to go in a different direction. I think business is a tenuous business. Businesses succeed, businesses fail. Things happen many years later, and it's possible to point the finger many years later and say you intended to defraud, and that's what's going on here. But it seems like you're saying you're acknowledging that it would be possible if they had evidence that from the beginning he had no intention to improve the brand or improve the company that there would be a ballot. They would state a fraud claim. Is that right? That would be possible. However, that isn't here. So what kind of evidence would they need to point to? They've cited the cases where there are contemporaneous news releases or expert reports that something could not have happened at the time without foreplanning. Those are the kinds of things that might lend themselves to evidence of present intent to defraud. But that's not here. And we're on a motion to dismiss, though, so should we not credit allegations? I mean if it could be that if that evidence exists it could establish fraud, why shouldn't we say that we credit the allegations on a motion to dismiss? You can credit some allegations on a motion to dismiss, but fraud is a serious business. It's a serious allegation with heightened pleading standards. That's why we have Rule 9B. It's tremendously damaging to people's reputations to be accused of fraud, and that is the policy justification for the heightened pleading standards. Here what you have is conclusory allegations of knowledge of falsity and one example provided of another business that felt that it was defrauded, that nobody even knew of that business at the time that these events occurred. Additionally, as my co-appellant said, the allegations of intent are still extremely hazy here. They're bordering on puffery, and were additionally flawed by not having specified individual defendants and speakers much of the time. Okay, thank you very much, Mr. Seville. We'll turn back to Ms. Bogorad on rebuttal. Thank you, Your Honor. Let me point out that subsequent misrepresentations as we showed in our briefs can be circumstantial evidence of prior intent. So if they kept lying afterwards and discontinued many, many years, it is circumstantial evidence that they were lying before as well. And what we also showed is that they're saying, oh, they've been in business together. It's not plausible that they wouldn't know this. We set forth allegations how he was moving around things. I think you agree with what I was suggesting, which is that maybe if you could show that at the time that he entered into the agreements, he had no intention to promote the brand or do other things to promote the business. Correct. It might be fraudulent. But if, in fact, he might have had that intent, but things changed based on business conditions later, it would not be fraudulent. But the facts that they— The frauds do require a heightened pleading standard. So if you don't have a piece of evidence that shows he didn't have the present intent at the moment that the contract was formed, not to abide by it or not to abide by those representations, doesn't that render the allegations implausible? But knowledge and intent need not be particularized, Your Honor. This is the kind of fact that fraud victims don't usually know. So requiring them to know this from the start, and this is the kind of fact you usually get in discovery. The repeated pattern is the strongest evidence here that he could not attend it. If you could show—you know, opposing counsel made the point about sometimes there's allegations that show something couldn't have been done without advanced planning. Like if you could show that he would—he could not have done any of these things unless he had planned from the beginning not to support their brand, that would be a fact that would establish that maybe he had—you know, he was not—he was fraudulent from the beginning. But the plan is evident in our pleading of the repeated pattern of doing this over and over to other businesses. This is the strongest circumstance. Another business that did not succeed, you think, is that allows for the inference that Limones never intended to support the brand. It's not just one. It's many businesses. There are allegations, and they are reciting the complaint, and this is what the district court missed. There are allegations that they are systematically— Well, the district court missed it because you never gave it to it on time, did it? No, this was in the first amended complaint, and the paragraphs I cited to you, Your Honor, are from the first amended complaint. They're there. They're saying they systematically destroy businesses. It's in the first amended complaint. And the fact that we—after the federal jurisdiction on Rico disappeared and we had a non-diverse defendant that we couldn't add, and we were told by the Delaware court to trial these claims together, and the district court already abstained from hearing one state claim. Yes, we tried. We thought we were at that point. We had to go to state court. The district court disagreed. That doesn't mean that we cannot appeal from the dismissal, the 12B6 dismissal of the first amended complaint. We think the first amended complaint did state enough allegations for fraud to proceed. And, Justice Wesley, you were kind of skeptical on reliance, and I would like to point out that in the first amended complaint, the fraud claim, the way it's stated, it's not to induce into the written agreement. Our claim has always been that we were induced into dealing with Limones and to go on the show in the first place. And the rations cost happened after we agreed to go on the show, after we agreed to go into business with Limones. But isn't the harm of what you're complaining resulting from the agreement? It's not from simply appearing on the show. Right. It's—but the fraud was to go on the show and go into—entrust the business to Limones, entrust the business to the show. But you could have gone on the show and said, this guy's a shyster. I'm not signing an agreement with him, right? They could, but they were stuck. He said, if you're not returning the $2 million I spent, you have to return it in order to back out of the deal. You're saying that just going on the show led to the debt to him for the renovations. They believed— And at that point you had no choice but to enter into the agreement with them? That's what he told them, that unless you repay me the $2 million I spent, you cannot back out of the deal. In order to back out of the deal—that was another lie, by the way—the deal that was made on the show, he said, you can't back out until you repay. And they never knew that they escalated. They always were told there would be the $200,000 budget. That was the budget that was presented on the show. Then Limones intentionally overspent. Then the business has to go in debt to him. And this is the repeated pattern. So if you hadn't signed it in, did he do that on behalf of the company, the spending? Because the company is entrusted to him. He says, I'm 100 percent in charge. So, yeah, he caused the company to incur this debt, and then he expends this debt. He drowns the company in debt, and that's repeated over and over. If you thought that that was fraudulent, the experience with the debt, one possibility is that your clients could have sued him at that point for fraud as opposed to signing a shareholder agreement, right? They might have. They didn't have any notice that there was anything wrongful going on. They did go into— What? Not anything going wrong. They were supposed to spend $200,000 in renovations. They spent millions of dollars. They spent lots of money in renovations. What are you talking about? They were told this is for the benefit of the— You have to see what's there to be seen, for good God's sakes. They were told that— I find that incredulous that you say that, that they had no way of knowing what was going on. That's part of their whole complaint. But, I mean, isn't Reliance— With all due respect, it really—it strains credulity to say that, doesn't it? But isn't Reliance— Somebody tells me they'll spend $200,000 to help me fix up my house, and then hands me a bill for a million bucks. Gets my attention. Right, but you also—if somebody says this makes your house better and this will allow it to sell it later, this is the improvement to your house, and you consulted this expert to make your business more profitable, why was it not enough for them to believe to proceed with him? Especially because they were stuck and they couldn't repay the debt. That's a different argument, right? Because a moment ago you were saying they were coerced into it because of the debt. But now you're saying that they trusted him and they thought that the debt wasn't a problem. They trusted that he had their best interests at heart. I'm just saying their fears were allayed. Just like, you know, they're saying they've been in business for so many years. How come they didn't know? Because he kept hiding it from them. He moved around growth. He moved around mankind. It was continuous concealment. And before the other profit participants came forth, there was no way to piece this together because this knowledge was within the exclusive possession of respondents. They always portrayed everybody as only succeeding on the show. Before the participants came out and the network of the pattern of this was put together, there was no notice that would make their fraud claims impossible. Okay. Thank you very much. I think we have that argument. Thank you, Ms. Bogorad. The case is submitted. And since that is the last argued case on our calendar this morning, we are adjourned. Court stands adjourned. Thank you.